# Daniel *v.* Baldwin, *et al.*

*Action by Creditor Against Sureties on Administrator's Bond.*

(Decided April 3rd, 1906.   40 So. Rep. 421.)

1. *Administrators; Unpaid Debts; Liability of Sureties; Proof.*—
    Upon averment and proof that the estate was solvent and that sufficient assets came .into the hands of the administrator to pay plaintiff's debt, and return of "no property" on execution *de bonis intestatis,* the sureties of the administrator are concluded as to the issue of *devastavit, vel non;* and the decree against the administrator, and its affirmance on appeal to this court, as to the amount of creditor's claim against the estate, taken in connection with the other averments and proof above set out, fixes the liability for such debt upon such sureties.

2. *Same; Voluntary Settlement; Effect; Subsequent Liability.*—
    When a minor creditor of the estate filed her account with

[Daniel v. Baldwin, et al.]

the administrator within twelve months after attaining majority, as authorized by § 131, Code 1896, such administrator is not discharged from liability as to such infant creditor, where sufficient assets of the estate came into the hands of such administrator to pay such claim, and he voluntarily settled and distributed said estate, without the knowledge of such claim.

3. *Same; Limitation.*—Assets in the hands of an administrator are primarily chargeable with the payment the debts of the estate, and so continue until such claims are paid, or barred by the statutes of non claim applicable to the particular claim.

4. *Same; Notice to Administrator.*—Under § 131, Code 1896, a claim presented to the administrator by a minor creditor of the estate, within a year after such minor attains majority, is in time, and it is no defense that such administrator did not know of such claim and distributed the assets of the estate, sufficient to pay the claim, in good faith.

5. *Appeal; Disposition of Cause; Reversal; Rendering Judgment.*— Where a cause is tried upon an agreed statement of facts, which asserts the only defense to the action, and the judgment must finally be rendered fixing liability upon the defendant, this court will not remand the cause, but will render judgment fixing such liability.

APPEAL from Montgomery City Court.
Heard before HON. A. D. SAYRE.

Lola Daniels, nee McQueen, recovered judgment against Whetstone as administrator of the estate of Mills Rogers. Execution was issued on the judgment, and returned no property found. She brings this suit against the sureties upon the administrator's bond. The allegations of the complaint and the facts of the case are sufficiently set forth in the opinion of the court.

GUNTER & GUNTER, for appellants.—There are but two questions presented by the record. 1st. Is a surety on an administrator's bond, after judgment against the administrator at the suit of a creditor, concluded by the judgment as to any defense the administrator might have interposed except that the administrator did not receive assets sufficient to pay the creditor. That he is concluded is settled in the following cases.—*Banks v. Speer,* 97 Ala. 560; *Street v. Henry,* 124 Ala. 153.

2nd. . Whether the surety is absolved by the fact that the administrator had distributed the assets of the estate to the distributees after eighteen months of the grant of letters.—*Whitfield v. Woolf*, 51 Ala. 202; *Thrash v. Sumalt*, 5 Ala. 13; §§ 131, 136, 202, 260, 263, 267, 277, code 1896; *Moore v. Lesuer*, 33 Ala. 237.

HORACE STRINGFELLOW, for appellee.—The case of *Walker v. Crews*, 73 Ala. 412, is directly in point and conclusive against the position taken by the appellant.

McCLELLAN, C. J.—Action by Lola Daniell, a creditor of the estate of Mills Rogers, deceased, against A. M. Baldwin, as surety on the bond of W. D. Whetstone as administrator of said estate. The complaint avers that the estate of said Rogers was solvent, that Whetstone as administrator thereof received ample funds belonging to said estate to satisfy plaintiff's debt, and that plaintiff had recovered a decree against said Whetstone as such administrator in the sum of $6,078.57, besides the sum of $409.95, costs of suit, and upon which an original and an alias fieri facias had been issued, leviable of the goods and chattels of Mills Rogers, deceased, in the hands of said Whetstone unadministered, and been returned "No property." The only defense attempted to the action was that Whetstone, the administrator, principal in said bond, had after the lapse of 18 months from the grant of letters of administration to him, in ignorance and without notice of the debt of Lola Daniell, this plaintiff, made a final settlement of his administration in the probate court of the proper county and distributed all the assets of the estate in accordance with the decree rendered on that settlement. The agreed statement of facts upon which the case was heard in the city court supports the averments of the complaint and also the attempted defense just referred to; but the question of the sufficiency of the attempted defense was duly reserved, and constitutes the only matter of necessary consideration on this appeal. In our opinion the decision of this court on the appeal of Whetstone from the decree recovered against him by this plaintiff—then Lola McQueen—which is the basis of the present suit,

taken in connection with the averment and proof in this case that the estate was solvent and that sufficient assets came to the hands of Whetstone as such administrator to pay plaintiff's debt, and the returns of "No property" on said executions, is determinative of this question against the appellee, defendant below. The decree against the administrator was itself conclusive upon the sureties on the administration bond as to the fact and amount of the indebtedness of the estate of Mills Rogers, deceased, to the plaintiff. Proof of the solvency of the estate and of sufficiency of assets in the administrator's hands to pay this debt, with the returns of "No property" on said executions de bonis intestatis, concludes the sureties on the issue of devastavit vel non, and, with the decree, fixes liability for the debt upon them. As was said in the case referred to (*Whetstone v. McQueen*, 137 Ala. 301, 317, 34 South. 229, 233): "The voluntary settlement and distribution made by Whetstone, administrator, of assets belonging to Rogers' estate, did not discharge him from liability to complainant. By reason of her minority she was not required by the statute of nonclaims to make presentation of her claims for rents and profits at a time earlier than when her bill was filed.—Code 1896, § 131. For the same cause she is exempt from the imputation of laches. "The mere circumstance of want of notice of a debt or claim against the estate of the deceased will not excuse an executor or administrator from the payment or satisfaction of it, if the assets were originally sufficient for that purpose, notwithstanding that, in ignorance of the existence of the debt or claim, he has bona fide handed over the assets to legatees or parties entitled in distribution.' —Williams on Ex'rs (6th Am. Ed.) 1456; Woerner's Am. Law Administration, § 451. Such is the common law rule and it has not in this state been abrogated by statute.

Indeed, our statutory provisions bearing upon the question, so far from abrogating or even militating against this doctrine, tend to affirmatively support it, and to demonstrate its application to the present case. Section 131 of the code, in terms extending the period for the presentation of the claims of minors, etc., having

[Daniel v. Baldwin, et al.]

no guardians, to 12 months after they attain full age, puts such claims throughout the extended period upon the same footing as the claims of persons sui juris within the presentation period of 12 months—formerly 18 months—prescribed for such persons, and there is no more warrant or reason for saying that a distribution by the administrator within the extended period provided for the presentation of claims of minors, etc., whether within or beyond the time for presentation of the claims of other persons, would leave no liability on the administrator to pay such claims than there is for holding him discharged by a distribution made within 12 months as to claims of persons sui juris of which he had no knowledge or notice, but which were subsequently, yet within that period, duly presented. The assets of an estate in the hands of the administrator are primarily charged with the payment of all the decedent's debts. They continue so as to each claim against the estate until the claim is paid or is barred by the statute of nonclaim applicable to that particular claim. The duty and liability to pay a claim which may be presented within 10 years continue throughout that period, just as the duty and liability to pay a claim which has to be presented within one year continues throughout that period; and it would be as anomalous to allow him to distribute the assets and be discharged within the 10-year limitation as to a claim presented within that period, on the ground that the distribution was made in good faith and in ignorance of the claim, as to allow such a defense against an ordinary claim, when with like ignorance and good faith he has made distribution within the year. The statute as to the claims of minors, etc., is a flaring notice, and, indeed, an express declaration, to the administrator that he is liable for all such claims, though not presented within 12 months from the grant of letters, and leaves him even less ground for unavailing complaint of hardship when forced after the lapse of years to pay such claims than he would have if there were no statute on the subject. Such claims throughout the extended period for their presentation are, of course, debts of the estate, which by the terms of section 202 of the code must be paid before the admin-

[Daniel v. Baldwin, et al.]

istrator has any right, as against creditors and upon his own initiative, to make final settlement and distribution. It is true that after the lapse of 12 months—18 at the time of the settlement here in consideration—and after debts of the estate have been paid, legatees and distributees may coerce the administrator to a final settlement and distribution; and it is true, also, that this may sometimes occur in fact when a debt excepted from the bar of the general statute of nonclaim has not been presented, and when the administrator is in total ignorance of its existence.

But the legislature took cognizance of this possible state of things, and in recognition of the hardship to an administrator which would result from such compulsory settlement and distribution, if he were not protected from such unknown, but still subsisting, claim against the estate, expressly provided that the order of distribution thus made "on the application of any legatee or person entitled to distribution" should be a protection to the administrator to the extent of the amount or value of the legacy or share ordered to be paid or distributed.—Code 1896, § 277. And there is frequent omission of any like provision in respect of an order of distribution made on the initiative of the administrator himself; the legislature proceeding on the assumption that an administrator would not volunteer to make final settlement and full distribution so long as any debt of the estate remained unpaid, and intending, doubtless, to leave him liable for any debt unprovided for at the time of such settlement, whether he knew or had notice of its existence or not. For any settlement and distribution made by an administrator of his own motion is a voluntary settlement and distribution within the rule of liability for undiscovered debts declared in *Whetstone v. McQueen, supra.* It is not only so denominated expressly in our statutes (Code 1896, § 225, 248), and not only would it be a palpable contradiction in terms to hold otherwise, but such settlement and distribution in point of legal duty resting on an administrator to seasonably make final settlement and distribution cannot be said to give a compulsory character to any settlement he makes of his own motion, else there

could be no such thing as a voluntary settlement within the language of the statutes and decisions. Nor does the mere possibility of liability upon him for interest on the funds of the estate, when settlement has been unreasonably delayed, convert a settlement otherwise essentially voluntray into an involuntary settlement. Such possibility may act to quicken the discharge of the general duty of seasonable settlement; but neither when considered alone nor in connection with that general duty can its effect in any case be to take a settlement of the class which the statutes and the adjudications declare to be voluntary settlements, by which is intended settlements made upon the initiative of administrators themselves, and put it into the class which are by the terms of the statute in form, and essentially involuntary settlements—that is, such as are coerced by orders of court made of its own motion or upon the application of the legatees or distributees. Moreover, it is open to the administrator generally to avoid all liability for interest by taking the proper steps to lend out the funds of the estate.

Both the general duty to make prompt settlements and distributions and the liability of the administrator for interest on funds in his hands, when he has unreasonably delayed settlement and distribution and on that account, exist wholly apart from statute. This duty and this liability were upon administrators at common law —as we express it—in all cases; and yet neither the one nor the other, nor both combined, was ever supposed to import such compulsion upon him to a speedy settlement as would make any settlement and distribution had on his own initiative so involuntary as to take it out of the doctrine of the common law, reaffirmed in *Whetstone v. McQueen, supra,* which holds him liable to undisclosed creditors though he has in good faith made distribution of all assets of the estate; and our statutes not only do not impinge upon this doctrine, but, as we have seen, expressly recognize such settlements and distributions as voluntary. Upon the foregoing considerations, we adhere to the decision of this point in *Whetstone v. McQueen, supra,* to the effect that Whetstone's settlement and distribution of the estate of Rogers was

voluntary, and that therefore he was liable for the debt of Lola McQueen (now Daniell), though he was ignorant and without notice of its existence at the time of such settlement and distribution; and we further hold, it being shown as an independent fact in this case that Roger's estate was solvent and that sufficient assets came into Whetstone's hands as administrator to pay this debt, that the defendant as surety on Whetstone's administration bond is liable in this action for the amount of the decree rendered in plaintiff's favor against Whetstone, with interest.

Nothing decided in *Walker, Guardian v. Crews*, 73 Ala. 412, is opposed to the decision in *Whetstone v. Mc-Queen*, or to the conclusion we have reached in this case. In the case of (*Walker v. Crews*) money and choses in action belonging to Corine Crews, an infant, were held by Arthur Crews in trust for her. Arthur Crews died. The trust property came into the hands of his administrator and was distributed to the next of kin after the lapse of 18 months from grant of letters. The claim of Corine Crews was not presented to the administrator, nor did he have any notice of it prior to such distribution, which, it seems, embraced the trust funds and all the assets of the estate; but, Corine continuing a minor, her claim was not barred. While yet under age, a guardian was appointed for her, and he filed a bill against the distributees of the estate, alleging the facts of which a synopsis is given above, and praying "(1) an account of how much money or other property, the property of Ella Corine Crews, was in the hands of said Arthur Crews, deceased, at the time of his death'; (2) 'an account of how much money or other property, belonging to said Ella Corine Crews, went into the hands of said John E. Crews, administrator of Arthur Crews, deceased, and was by him distributed among the heirs at law of said Arthur Crews, deceased'; (3) 'an account of how much money or other property, belonging to the estate of said Arthur Crews, deceased, went into the hands of said John E. Crews, administrator of Arthur Crews, deceased, and by him distributed among the heirs at law of said Arthur Crews, and in each case the names of all the parties to whom such payments or dis-

tributions were made, and the amounts paid to each'
one; (4) 'a decree establishing a trust fund in the es-
tate of Arthur Crews, deceased, which went into the
hands of John E. Crews, administrator, in favor of ora-
tor, for the use of said Ella Corine Crews, to be paid by
contribution from those to whom the estate of said Ar-
thur Crews was given or distributed'; (5) 'a money de-
cree in favor of orator, as guardian of said Ella Corine
Crews, and for her use, against the several parties to
whom the money or property of the estate of Arthur
Crews, deceased, was distributed and paid, to be by them
paid by contribution, in the mode, manner, and sums
authorized by law, and the facts of the case, or to be
paid in the mode and manner, and sums as your Honor
may direct'; and (6) for general relief." From this
statement of that case, it is obvious that complainant's
purpose was not to charge the administrator as for a
devastavit of the assets of the estate, but to follow the
trust fund, money and choses in action belonging to the
complainant, and not to the estate at all, into the hands
of the persons to whom the administrator had distrib-
uted it, on the assumption that the fund constituted as-
sets of the estate. We are unable to see how the question
of the administrator's liability as to a creditor whose
debt, being exempt from the statute of nonclaim, was
not presented or known to him till after the distribution,
could have arisen in that case. As a matter of fact it
did not arise. To the contrary the only defense insisted
on in this court were, first, a denial of the existence of
the trust; and, second, that, conceding the trust and the
payment of the trust fund by the administrator to the
next of kin, of whom the administrator was one, the
complainant's remedies were plain, adequate, and com-
plete at law against the administrator as an individual
and the other distributees for money had and received.
Both these defenses were denied by the court, the first
on the averments and evidence, and the second, present-
ed by demurrer, on the ground that the subjection of
the assets in the hands of the distributees required "the
taking of a complicated account of such a character as
clearly gives the chancery court jurisdiction." This was
the decision in that case, and all that was decided, or

[Daniel v. Baldwin, et al.]

could have been decided, in it. What else Judge Stone said to the effect that the estate was distributed before the administrator "had any knowledge of this claim, * * * and hence the complainant is without remedy to enforce her claim unless she can pursue assets in the hands of other distributees," and that "the estate was not settled or distributed prematurely, but Corine, being an infant, was allowed to present her claim within eighteen months after the removal of her disabilities," was wholly beside the mark, outside of the case presented, and purely dicta. Even had the complainant been a simple creditor of the estate—had the fund she sought to subject not been impressed with a trust in her favor—the consideration that she had a remedy either at law or in equity against the distributees would not at all militate against the theory that the administrator was also liable to her as for a devastavit. She had both remedies, and might pursue both to satisfaction, or either.

These dicta, in so far as they tend to a denial of the liability of an administrator in such cases as for a devastavit, are unsound. Indeed, the last declaration of Stone, J., quoted above, itself suggests an inquiry, the pursuit of which goes far to demonstrate the unsoundness of the others. We refer to this expression: "But Corine, being an infant, was allowed to present her claim within eighteen months after the removal of her disabilities." For what purpose was she allowed to present her claim? For payment, of course. But to whom? Not to the distributees, surely, for the statute does not provide for or contemplate such presentation. Then it must be to the administrator. But, if the administrator is under no duty or liability to pay it, why present it to him at all? Such a presentation would be a vain and useless thing. It is not the habit of lawmakers to provide for the doing of vain and useless things, nor of courts to hold that they have done vain and useless things. To Corine, considered merely as a creditor, the lawmakers had said: "If you present your claim to the administrator within 18 months after you attain your majority, it will be his duty to pay it." And it was not for the court in that case to break this prom-

[Daniel v. Baldwin, et al.]

ise of the statute, nor is it for the court in this case to say that the beneficent exception of the claims of minors and persons of unsound mind from the operation of the statute of nonclaim pending their disabilities should in any case be allowed to operate as a snare and a delusion to the destruction of claims which its sole purpose was to preserve.

The judgment of the city court must be reversed, and a judgment will be here rendered for the plaintiff.

Reversed and remanded.

HARALSON, DOWDELL, and DENSON, JJ., concur.

WEAKLEY, C. J. (On application to modify.)— Application is made to modify the judgment heretofore rendered, so as to remand the cause, without rendering judgment here for appellant. We recognize the general rule that the court will not render final judgment for an appellant if it will prevent appellee from obtaining a review of rulings against him, but this is not a case for its application. The complaint states a substantial cause of action, and the case was tried on an agreed state of facts. This agreement shows appellee is liable, and that his only asserted defense is without merit. The grounds of demurrer are either concluded by the principles of the opinion of the late Chief Justice, or raise objections of form merely, easily curable by amendment. No matter how long the evil day be postponed, appellee must, on the admitted facts, ultimately suffer the judgment we have rendered. It would be of no substantial benefit to him, and would but unduly prolong the litigation, to grant his application to modify.

Application overruled. All the Judges concur.